UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STEVEN LACHUTE | * | NO. |
| | * | |
| V. | * | DISTRICT JUDGE: |
| | * | |
| OCHSNER CLINIC FOUNDATION | * | MAGISTRATE JUDGE |
| | * | |
| | * | JURY TRIAL DEMANDED |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

1.

Made Complaintant herein is STEVEN LACHUTE (LACHUTE), a person of the full age of majority, domiciled in the State of Mississippi.

2.

Made Defendant herein is OCHSNER CLINIC FOUNDATION (OCHSNER), a domestic, non-profit corporation domiciled in the Parish of Orleans, State of Louisiana.

3.

Venue is appropriate in this jurisdiction because the defendant is domiciled in the Eastern District of Louisiana and the parties are diverse.

4.

The defendant, OCHSNER, is indebted unto your Petitioner for the following reasons to-wit:

5.

On January 29, 2007, LACHUTE was a patient cared for by employees of OCHSNER

and underwent a left hemicolectomy and colorectal anastamosis.

6.

The anastamosis, however, was unnecessary.

7.

Instead of the anastamosis, the proper procedure was a colonstomy.

8.

Regardless of whether the anastamosis was the correct procedure, the follow-up care was below the standard of care.

9.

The operation was performed on January 29, 2007.

10.

The next day, the white blood count of LACHUTE was 24,000 with a positive fluid balance of 4228 mL with 622 mL excreted.  On the same day, the patient had a sudden onset of left-sided abdominal pain with a distended abdomen.

11.

The examining physician was concerned about intra-abdominal bleeding and ordered a KUB x-ray of the abdomen and a hemoglobin/hematocrit level.

12.

The radiologist from OCHSNER recognized that an inappropriate test had been ordered and recommended that upright views or a CT scan be done.

13.

A CT scan would have shown the leak that was present at the surgical site.

14.

However, OCHSNER employees failed to order the test recommended by their own radiologist.

15.

Instead, on January 31, 2007, the fluid intake was 4969 with only 850 mL excreted. In addition, the white blood cell count was 19,700.

16.

By February 1, 2007, the white blood count increased to 26,000 with a positive fluid balance of 4492 mL in and 1067 mL out.

17.

Furthermore, on February 1, 2007, at 10:00 PM, an OCHSNER nurse noted a "grossly distended" abdomen with a reflux of green liquid.

18.

Nothing was done to determine the reason for the grossly distended abdomen despite severely unusual findings, abdominal pain; high white blood count and substantially decreased urinary output.

19.

LACHUTE's abdomen was found on February 2, 2007 to be distended, yet nothing was done until 5:43 when LACHUTE was totally decompensated and required intubation and taken

to the Intensive Care Unit.

20.

As a result of the defective care, LACHUTE was required to have pressors instituted to elevate his blood pressure.

21.

At this time, LACHUTE was in septic shock and only 2400 mL of fluid was given.

22.

Much greater fluid amounts were necessary with LACHUTE's condition of being in septic shock.

23.

Because of the inadequate fluid administration, the pressors severely vaso-constricted the peripheral tissues causing gangrene and loss of fingers, toes and part of LACHUTE's leg.

24.

Additionally, there was no optimization of fluid volume using the Swan-Ganz catheter, nor was there the use of blood lactate levels to obtain an overall measure of tissue perfusion.

25.

By 11:30 AM on February 2, 2007, surgery was performed and the abdomen was opened resulting in a "rush of free air."

26.

The large amount of air accumulation was indicative of prolonged neglect.

27.

All of the medical providers administering care to LACHUTE were employed by OCHSNER.

28.

The actions of OCHSNER, through its employees, were below the acceptable standard of care of similar physicians in this community.

29.

OCHSNER had a legal duty to ensure that care rendered to LACHUTE was performed correctly and diligently including, but not limited to, avoiding unnecessary surgical procedures; performing tests ordered by its own physicians; diagnosing and addressing serious medical conditions; providing necessary and adequate follow-up care; and avoiding gangrene and loss of limbs.

30.

This legal duty was designed to protect Petitioner and those similarly situated from this type of harm arising in this manner.

31.

Petitioner further represents that the defendant, OCHSNER, breached its legal duty which such breach was the legal cause and cause in fact of injuries sustained by LACHUTE, and further, the sole and proximate cause of LACHUTE's damages without any comparative negligence on the part of your Petitioner.

32.

OCHSNER committed the following, non-exclusive acts of negligence and breach of its standard of care to-wit:

A. Failing to maintain a safe environment;

B. Failing to provide adequate medical care:

C. Performing unnecessary surgical procedures;

D. Failing to perform a CT scan ordered by its own radiologist;

E. Ordering the incorrect medical procedure, a KUB x-ray, rather than a CT scan;

F. Failing to diagnose a leak in the anastamosis surgical site;

G. Failing to render appropriate medical care for the leak at the anastamosis site;

H. Failing to recognize signs of a leaking anastamosis site and infection;

I. Failing to provide necessary fluids in conjunction with vaso-pressors;

J. Allowing gangrene to set, causing loss of fingers, toes, and part of LACHUTE's leg;

K. Failing to property attend, supervise and monitor LACHUTE;

L. Failing to provide adequate nursing services;

M. Failing to observe LACHUTE and the conditions that were presented;

N. Failing to provide necessary medical attention and physician services for a patient in LACHUTE's condition;

O. Any and all other acts of negligence and breach of the standard of care inherent in this Petition and/or as may be demonstrated through discovery and/or trial.

33.

As a result of the foregoing, your Petitioner, LACHUTE, has been caused to sustain the following damages, more particularly, though non-exclusively described as follows:

| | | |
|---|---|---|
| A. | Past, present and future pain and suffering | Reasonable |
| B. | Past, present and future mental anguish and anxiety | Reasonable |
| C. | Past, present and future medical and rehabilitation expenses | Reasonable |
| D. | Past, present and future lost wages | Reasonable |
| E. | Past, present and future loss of earning capacity | Reasonable |
| F. | Loss of enjoyment of life | Reasonable |
| | Total | Reasonable |

34.

A Request for a Medical Review Panel was submitted timely and a decision was rendered on August 15, 2011.

35.

WHEREFORE, Petitioner, STEVEN LACHUTE prays that:

A. The defendant herein, OCHSNER CLINIC FOUNDATION, be duly cited and served a copy of this Petition and be required to answer same in accordance with the law;

B. After due delays and proceedings had, there be judgment here in favor of Petitioner, STEVEN LACHUTE, and against the defendant herein, OCHSNER CLINIC FOUNDATION, for any and all damages necessary and appropriate in

       the premises along with judicial interest as set forth by law and all costs of these proceedings; and

C.    For all general and equitable relief.

Respectfully submitted,

By: s/ Timothy R. Richardson
**TIMOTHY R. RICHARDSON, (LSBN 27625)**
1615 Poydras Street, Suite 1250
New Orleans, Louisiana 70112
Tel: (504) 592-4600 Fax: (504) 592-4641
Attorney for Plaintiff

**BENJAMIN WISE**
P.O. Box 4641
Jackson, MS 39296

## CERTIFICATE OF SERVICE

I do hereby certify that on this 9th day of November, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that a copy of the foregoing will be sent to all non-CM/ECF participants by United States Mail, properly addressed and postage prepaid.

s/ Timothy R. Richardson
Timothy R. Richardson